IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SILER,                        :    CIVIL ACTION
                                      :    No. 14-5019
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
COMMUNITY EDUCATION CENTERS, INC., :
                                      :
          Defendant.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          October 2, 2014

          Plaintiff Michael Siler filed this employment
discrimination action against Defendant Community Education
Centers, Inc., also known as George W. Hill Correctional
Facility or Delaware County Prison ("the Prison" or "CEC").
Plaintiff raises at least fourteen different state and federal
claims against his former employer, including wrongful
termination, breach of contract, harassment, and discrimination,
among other things. Plaintiff moved to remand the case to the
Court of Common Pleas of Delaware County. Defendant moved to
dismiss both Plaintiff's claims and his motion to remand, and
moved to strike portions of Plaintiff's complaint as
impertinent, immaterial, and scandalous. For the reasons that
follow, the Court will (1) deny Plaintiff's motion to remand;
(2) grant Defendant's motion to strike; (3) grant Defendant's

motion to dismiss Plaintiff's common law claims of wrongful termination (Count I), breach of contract (II), unjust enrichment (III), negligence (IV), gross negligence (V), harassment (VI), and emotional distress (VII); and (3) deny Defendant's motion to dismiss Plaintiff's Title VII- and PHRA-based claims of discrimination (VIII and IX), hostile work environment (X and XI), and retaliation (XII and XIII).

## I.   BACKGROUND

Plaintiff, a former prison intake officer, alleges that CEC wrongfully terminated him after he was falsely accused of stealing $72 from a prisoner's prison bank account. Compl. ¶¶ 5-9, 14. Plaintiff avers that, despite numerous other plausible explanations for the missing funds, white prison investigators accused and abruptly terminated him without proper adherence to the progressive disciplinary policy mandated by CEC's collective bargaining agreement. Compl. ¶¶ 6, 10-14. According to the Plaintiff, a white corrections officer would never have been accused of theft under the same circumstances, as illustrated by a disregarded allegation that a white officer had stolen $750 from another inmate. Compl. ¶ 7.

Plaintiff claims that this termination fits into a pattern of pervasive racial discrimination against CEC's African American employees and inmates. Compl. ¶¶ 7, 12-36. With

plentiful anecdotal claims, though with little statistical evidence,[1] Plaintiff recounts numerous instances in which he experienced and witnessed severe discrimination against himself and other African American officers and inmates of the Prison.[2] Compl. ¶¶ 16-36. In particular, Plaintiff describes being continually antagonized by a supervising sergeant and filing an incident report about the hostile work environment created by said sergeant. ¶ 9. The Prison never acted upon this incident report. Id. That same sergeant was the custodian of the receipt book that was allegedly improperly accessed to give a receipt to the inmate that lost the $72. Id. Moreover, that sergeant apparently played a central role in the circumstances leading up to Officer Siler's allegedly wrongful termination. Id.

Plaintiff also argues that CEC breached a mandatory provision of the collective bargaining agreement, which requires the employer to initially impose sanctions short of discharge.

---

[1]     The Plaintiff does, however, assert that the proportion of African American corrections officers dropped from 90% in 2009 to less than 30% in 2012, allegedly as a result of "1) unwarranted terminations for cause, 2) lack of promotions, [and] 3) selective hiring." Compl. ¶ 15.

[2]     Mr. Siler includes a great deal of background information--which is the subject of Defendant's motion to strike--about the Defendant's allegedly discriminatory treatment of African American corrections officers and inmates, although he does not allege that he was present for or personally subjected to most of that discriminatory conduct. Thus, the Court will only include the facts relevant to the claims at issue here.

Plaintiff points to ambiguous sections of the agreement that provide exceptions to the prescribed progressive disciplinary policy, and argues that they have been disproportionately deployed to disenfranchise African American corrections officers like himself. Compl. ¶¶ 10-14. For these and the above-mentioned injuries, in addition to numerous statutory and common law claims arising out of Defendant's alleged discriminatory conduct, Plaintiff demands a judgment in excess of $500,000 against the Defendant.

## II.  PROCEDURAL HISTORY

Plaintiff initiated this action on August 11, 2014, by filing a complaint in the Court of Common Pleas of Delaware County. Defendants removed the action to this Court, asserting federal question jurisdiction based on Plaintiff's Title VII claims. Notice of Removal, ECF No. 1. Plaintiff's complaint brings the following thirteen counts:

| | |
|---|---|
| Count I | Wrongful Termination |
| Count II | Breach of Contract |
| Count III | Unjust Enrichment |
| Count IV | Negligence |
| Count V | Gross Negligence |
| Count VI | Common Law Harassment |
| Count VII | Emotional Distress |

| Count VIII | Discrimination (Federal) |
| Count IX | Discrimination (State) |
| Count XI [sic] | Hostile Work Environment (State) |
| Count XI | Hostile Work Environment (Federal) |
| Count XII | Retaliation (Federal) |
| Count XIII | Retaliation (State) |

Compl. ¶¶ 38-92.

On September 3, 2014, Defendant moved to dismiss Plaintiff's complaint. Mot. Dismiss, ECF No. 5. Plaintiff then filed a motion to remand on September 9, 2014. Mot. Remand, ECF No. 9. On September 12, 2014, Defendant filed a response to Plaintiff's motion to remand (Def.'s Resp. Mot. Remand, ECF No. 14), and Plaintiff filed a response to Defendant's motion to dismiss (Pl.'s Resp. Mot. Dismiss, ECF No. 13). Defendant then submitted a motion for leave to file a reply brief in support of its motion to dismiss on September 16, 2014. Def.'s Mot. Reply Br. Supp. Mot. Dismiss, ECF No. 15. Most recently, Plaintiff filed a response to Defendant's motion for leave to file reply brief with an accompanying nunc pro tunc request (to amend a misprinted portion of the earlier-filed response to Defendant's motion to dismiss). Resp. Def.'s Mot. Reply Br. Supp. Mot. Dismiss, ECF No. 17.

## III. LEGAL STANDARD

### A.  Motion to Remand

"Federal Courts are courts of limited jurisdiction," and federal jurisdiction is not presumed. Cuquenan v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A defendant may remove an action filed in state court if the plaintiff could have initially brought it in federal court. See 28 U.S.C. § 1441(a). Following removal, the defendant bears the burden of demonstrating federal jurisdiction, see Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 151 (3d Cir. 2009), and all doubts are resolved in favor of remand, see Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009). "Ruling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling the district court must assume as true all factual allegations of the complaint." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted), superseded by statute on other grounds.

### B.  Motion to Strike

Rule 12(f) permits a party to move to "strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2).
"Motions to strike are decided on the pleadings alone, and
should not be granted unless the relevant insufficiency is
'clearly apparent.'" Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d
127, 132-33 (E.D. Pa. 2007) (quoting Cipollone v. Liggett Group,
Inc., 789 F.2d 181, 188 (3d Cir. 1986)). Motions to strike are
generally denied unless the material bears no possible relation
to the instant case or controversy, or if the material would
cause prejudice. See 5C Charles Alan Wright et al., Federal
Practice and Procedure § 1382 (3d ed. 1998).

     C.   Motion to Dismiss

          A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal
quotation marks omitted). To withstand a motion to dismiss, the
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007). This "requires more than
labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." <u>Id.</u> Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (cited with approval in <u>Twombly</u>, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. <u>See, e.g.</u>, <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. <u>See</u> <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV.  DISCUSSION**

Plaintiff submitted a motion to remand the case to the Court of Common Pleas of Delaware County. Defendant submitted a motion to dismiss, which also included a motion to strike various paragraphs of Plaintiff's complaint under Rule 12(f). Each motion will be considered below.

A.   Motion to Remand

Plaintiff moves to remand the case to the Court of Common Pleas of Delaware County. Plaintiff argues that removal effectively destroys the right to hear certain state law claims that have been recognized by that court,[3] but have not been recognized by the federal courts.[4] In the alternative, Plaintiff asks the court to decline to exercise supplemental jurisdiction over said state law claims.

This case is properly within this Court's subject matter jurisdiction, as the Court has federal question jurisdiction over Plaintiff's Title VII claims. 28 U.S.C.

---

[3]      See Stephen Marek v. Cmty. Educ. Ctrs., Inc., 13-cv-9486 (Del. Cnty. Ct. Com. Pl. Feb. 14, 2014); Bates v. Cmty. Educ. Ctrs., Inc., 12-cv-7631 (Del. Cnty. Ct. Com. Pl. Jan 10, 2013).

[4]      See Blocker v. Cmty. Educ. Ctrs., Inc., 13-cv-5127, 2014 WL 1348959, at *4 (E.D. Pa. Apr. 7, 2014); Black v. Cmty. Educ. Ctrs., 13-cv-6102, 2014 WL 859313, at *2-4 (E.D. Pa. Mar. 4, 2014).

§ 1331. This is not disputed by either party. Defendant
exercised its statutory right to remove the case, and
Plaintiff's preference for a forum where it supposedly could
obtain a more favorable result is immaterial. Moreover, all
claims that will be dismissed below are clearly unsupported by
well-settled Pennsylvania State law, and thus remand would be
doubly improper. Accordingly, the Court will deny Plaintiff's
motion to remand.

      B.   <u>Motion to Strike</u>

      Defendant also argues that a number of paragraphs of
Plaintiff's Complaint should be stricken under Federal Rule of
Civil Procedure 12(f), as instances of "immaterial, impertinent,
or scandalous matter." "The purpose of a motion to strike is to
clean up the pleadings, streamline litigation, and avoid
unnecessary forays into immaterial matters." <u>Natale v. Winthrop
Res. Corp.</u>, 07-cv-4686, 2008 WL 2758238, at *14 (E.D. Pa. July
9, 2008) (internal quotation marks omitted). Relief under Rule
12(f) is generally disfavored and will be denied unless the
allegations "have no possible relation to the controversy and
may cause prejudice to one of the parties, or if the allegations
confuse the issues in the case." <u>Id.</u> (internal quotation marks
omitted).

Defendant specifically asks the Court to strike paragraphs 17-18 and 23-29 of Plaintiff's Complaint, which alleges that white officers mistreated inmates and other African American officers.[5] Defendant asserts that none of these passages are pertinent to Plaintiff's own employment discrimination claims, and that there is no good faith basis for Plaintiff to assert them. The Court finds that none of these passages have any bearing on the discrimination or hostile environment that Plaintiff personally experienced at the hands of Defendant. Moreover, the inclusion of these passages within Plaintiff's complaint would excessively expand the Defendant's obligation under Rule 8(b) to respond to each of these allegations--which are well beyond the scope of Plaintiff's actual, personal grievances with the Defendant. Thus, the Court will grant Defendant's motion to strike these passages.

C.   Motion to Dismiss

Defendant's motion to dismiss asserts that each count of Plaintiff's complaint should be dismissed. Starting with the common law claims, each count will be considered in turn.

---

[5] This same Defendant, CEC, asked the courts in Blocker and Black to strike various passages of the Plaintiffs' complaints--and both courts elected to strike a few that they found had "no possible relation to the controversy" (which included statements like "[t]hat tormented officer ultimately killed his wife," and "his wife might be alive today"). Blocker, 2014 WL 1348959, at *8; Black, 2014 WL 859313, at *8.

1.  <u>Wrongful Termination—Count I</u>

Plaintiff makes several arguments that his collective bargaining agreement with CEC permits an employee to raise non-contractual claims, like wrongful termination, in a court of law rather than through arbitration. He does not offer any argument, however, that directly counters the clear and binding Third Circuit precedent that wrongful termination claims are only available to at-will employees. See <u>Ciferni v. Day & Zimmerman, Inc.</u>, 529 F. App'x 199, 203 (3d Cir. 2013) ("Pennsylvania courts consistently have held, however, that those common law wrongful discharge suits cannot be brought by union employees subject to a CBA."); <u>see also</u> <u>Coppola v. Jneso-Pocono Med. Ctr.</u>, 400 F. App'x 683, 684 (3d Cir. 2010) ("[U]nion employees subject to collective bargaining agreements may not pursue wrongful discharge claims against former employers."). Plaintiff has conceded he was not an at-will employee of CEC. Amend. Resp. Mot. Dismiss 6, ECF No. 17. Given the clear weight of precedent, the Court will dismiss Plaintiff's wrongful termination claim.

2.  <u>Breach of Contract—Count II</u>

CEC argues that a provision in the collective bargaining agreement provides that arbitration is "the exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements or claims made under or related to this

Agreement or arising from employment at the facility." Mot.
Dismiss Ex. F, at § 11.7.F, ECF 5. Defendant asserts that this
arbitration provision bars any contract claims Plaintiff
asserts. Plaintiff, however, argues that the "split cause of
action" doctrine mandates that any contractual claims must be
allowed to accompany noncontractual claims raised in court, in
order to preserve such contractual claims.

Two other courts in this district confronted
essentially identical arguments[6] with regard to this very same
collective bargaining agreement, and each dismissed the
plaintiffs' breach of contract claims. Blocker v. Cmty. Educ.
Ctrs., Inc., 13-cv-5127, 2014 WL 1348959, at *4 (E.D. Pa. Apr.
7, 2014); Black v. Cmty. Educ. Ctrs., 13-cv-6102, 2014 WL
859313, at *2-4 (E.D. Pa. Mar. 4, 2014). As referenced above,
and as the courts in Blocker and Black observed, the arbitration
provision of the collective bargaining agreement clearly and
unambiguously states that "the grievance and arbitration
procedures set forth herein are the exclusive and sole mechanism
for the resolution of any grievances, disputes, disagreements or
claims made under or related to this Agreement or arising from
employment at the facility." Mot. Dismiss Ex. F, at § 11.7.F,

---

[6]         Those cases involved two female former CEC employees
represented by the same attorneys that represent the Plaintiff
in this case. There are even places throughout the briefs still
retaining words like "her" that were not updated.

ECF 5. Moreover, although the Plaintiff points to other language
stating that "where a statutory, non-contractual right is at
issue, this provision does not prevent an Officer from pursuing
an action in a court of law after first utilizing the grievance
procedures stated herein" (Mot. Dismiss Ex. F, at § 11.7.F, ECF
5), this clearly is a contractual claim, and thus such language
is inapplicable here.

    In response, Plaintiff asserts a "split cause of
action" doctrine argument, in which he contends that he had to
bring all of his claims in one suit lest he waive them. Such an
argument not only directly conflicts with the clear meaning of
the arbitration provision, but it renders it a nullity. By this
logic, any party to the agreement would be able sidestep it with
ease, and would be able to bring any and all employment-related
claims in a court of law. Thus, this argument fails.

    Plaintiff also claims that the arbitration clause is
impermissibly inconspicuous. The clause, however, is contained
under a heading entitled "GRIEVANCE PROCEDURE AND ARBITRATION,"
written in capital letters. Mot. Dismiss Ex. F, at § 11, ECF 5.
And again, it unambiguously states, in a separately numbered
paragraph, that "the grievance and arbitration procedures set
forth herein are the exclusive and sole mechanism for the
resolution of any grievances, disputes, disagreements or claims
made under or related to this Agreement or arising from

14

employment at the facility." Id. at § 11.7.F. This argument also fails, and as the court in Black observed, "[u]nder Pennsylvania law, failure to read a contract does not excuse a party from being bound by its terms." Black, 2014 WL 859313, at *3 (quoting Schwartz v. Comcast Corp., 256 F. App'x 515, 520 (3d Cir. 2007)).

Finally, Plaintiff contends that CEC is collaterally estopped from arguing that the arbitration clause barred his breach of contract claim because the Court of Common Pleas of Delaware County overruled preliminary objections in two similar employment cases involving similar arguments. Stephen Marek v. Cmty. Educ. Ctrs., Inc., 13-cv-9486 (Del. Cnty. Ct. Com. Pl. Feb. 14, 2014); Bates v. Cmty. Educ. Ctrs., Inc., 12-cv-7631 (Del. Cnty. Ct. Com. Pl. Jan 10, 2013). The fact that a state court denied these preliminary objections, however, is irrelevant here, as neither of the court's rulings constituted a judgment on the merits--and thus these rulings are without adverse preclusive consequences for either party. See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (stating that both issue and claim preclusion require an underlying "final judgment on the merits"). For the above-stated reasons, therefore, the Court will dismiss Plaintiff's breach of contract claim.

15

### 3.   Unjust Enrichment—Count III

Plaintiff's claim that Defendant was unjustly enriched by his firing also fails. Plaintiff speculates that CEC received an unjust financial benefit from his termination, conceivably through "not paying her [sic] salary or paying less of a salary to a new employee." Compl. ¶ 47. An unjust enrichment claim is barred, however, where the parties' relationship is based on a valid written contract. See, e.g., Reynolds v. Univ. of Pa., 483 F. App'x. 726, 734 (3d Cir. 2012); Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 527 (E.D. Pa. Jan. 27, 2012). Here, neither party disputes the validity of Plaintiff's collective bargaining agreement. The cases cited by Plaintiff involve alternative theories of recovery where the validity of the contract was at issue. By contrast, the issue here is not the validity of the agreement, but whether the agreement provides the exclusive remedy. Therefore, the Court will dismiss Plaintiff's claim for unjust enrichment.

### 4.   Negligence and Gross Negligence—Counts IV and V

Plaintiff alleges in Counts IV and V that CEC breached its duty to supervise its employees when it "consciously disregarded the reported acts of discrimination." Compl. ¶¶ 57-58. Plaintiff argues that he pled sufficient facts to make out these claims. Even if that were true, however, these claims of

16

negligent supervision are preempted by the Pennsylvania Human Relations Act ("PHRA"). Under settled Pennsylvania law, "it is firmly established that negligent supervision claims arising out of discrimination cases situated in the Commonwealth of Pennsylvania must be brought under the [PHRA]." Randler v. Kountry Kraft Kitchens, 11-cv-0474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012). Given that Plaintiff's negligent-supervision claims arise out of his allegations of discrimination, and, thus, are preempted by the PHRA, the Court will dismiss Counts IV and V.

5.   Common Law Harassment—Count VI

Plaintiff's common law claim of harassment is similarly preempted by the PHRA. When there is no separate set of facts alleging intentional tortious conduct outside of a plaintiff's employment relationship with an employer, common law actions, including harassment, are preempted. See Hainan v. S&T Bank, 10-cv-1600, 2011 WL 1628042, at *5 (W.D. Pa. Apr. 27, 2011); Keck v. Commercial Union Ins. Co., 758 F. Supp. 1034, 1039 (M.D. Pa. 1991); see also Wolk v. Saks Fifth Ave. Inc., 728 F.2d 221, 224 (3d Cir. 1984) (rejecting plaintiff's common law harassment claim, and stating that "'the procedures legislatively mandated in the PHRA must be strictly followed," for "[i]f a common law action for the same claims were

recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures'" of the PHRA (quoting Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 919 (3d Cir. 1982))). Accordingly, the Court will dismiss Plaintiff's common law harassment claim.

### 6.    Emotional Distress—Count VII

Plaintiff's complaint also asserts claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). Both claims are insufficiently pled.

In Pennsylvania, to make out a claim of NIED, the plaintiff must prove either (1) the defendant had a contractual or fiduciary duty[7] toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 217 (Pa. Super. Ct. 2012). In all of these situations, the plaintiff's emotional distress must be physically manifested.

---

[7]    Not just any contractual or fiduciary relationship will suffice for NIED liability, but only those relationships that involve "duties that obviously and objectively hold the potential of deep emotional harm in the event of breach" and which "encompass an implied duty to care for the plaintiff's emotional well-being." Toney v. Chester Cnty. Hosp., 36 A.3d 83, 95-96 (Pa. 2011).

Greene v. City of Phila., 11-cv-5356, 2012 WL 4462635, at *3-4
(E.D. Pa. Sept. 26, 2012).

　　　　Plaintiff does not specify which of the above theories
of NIED he is claiming, nor does he plead sufficient facts to
make out any of them. To begin with, Plaintiff's contractual
relationship with CEC, as a former employee of the Prison, is
insufficient under Pennsylvania law to qualify as the type of
"special relationship" that "encompass[es] an implied duty to
care for the plaintiff's emotional well-being." Toney, 36 A.3d
83 at 95-96. Compare Yarnall v. Philadelphia Sch. Dist., 11-cv-
3130, 2013 WL 5525297, at *2 n.2 (E.D. Pa. Oct. 7, 2013)
(finding employee-union relationship insufficient), with Madison
v. Bethanna, Inc., 12-cv-1330, 2012 WL 1867459, at *12 (E.D. Pa.
May 23, 2012) (finding adoption agency-adopting parent
relationship sufficient). Nor has Plaintiff alleged the
requisite presence of a physical manifestation of his distress.
Thus, the Court dismisses Plaintiff's NIED claim.

　　　　Plaintiff has similarly failed to sufficiently plead a
claim of IIED. To make out such a claim, Plaintiff must
establish that (1) the conduct was extreme and outrageous;
(2) the conduct was intentional or reckless; (3) the conduct
caused emotional distress; and (4) the distress was severe. See
Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273-
74 (3d Cir. 1979). To the extent Plaintiff claims his

19

discriminatory treatment and termination are the basis of his
emotional distress, Plaintiff's allegations are insufficient to
meet the outrageousness element of an IIED claim. See, e.g.,
Whitaker v. Firman, 12-cv-224, 2013 WL 4498979, at *6 (W.D. Pa.
Aug. 20, 2013) ("[D]istrict courts in this circuit have
consistently held that alleged discrimination alone does not
rise to the level of outrageousness necessary to establish
IIED."). Plaintiff also alleges several egregious acts by prison
guards toward prisoners and other guards. See, e.g., Compl. ¶¶
26-27. To the extent Plaintiff asserts these acts caused him
emotional distress, his claim also fails because, among other
things, he does not allege he was present to observe these
events or that he suffered bodily harm as a result of his
distress. See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650,
652 (Pa. 2000) (finding that, under the Restatement (Second) of
Torts § 46(2), where outrageous conduct is directed at a third
person who is not plaintiff's immediate family member, a
plaintiff must be present at the time of the alleged misconduct
and must also suffer bodily harm as a result of distress).
Accordingly, the Court will also dismiss Plaintiff's IIED claim.

### 7.   Discrimination—Counts VIII and IX

Plaintiff alleges that the treatment he received while
employed at CEC and his abrupt termination were the result of

20

invidious discrimination in violation of Title VII and the PHRA. Addressing the claims as a single claim of discrimination,[8] Defendant argues that Plaintiff's Title VII claim is time-barred, and that Plaintiff has insufficiently plead a claim of discrimination.

When, as here, the Equal Employment Opportunity Commission ("EEOC") does not sustain a charge of discrimination, it issues a right-to-sue letter, which gives the plaintiff 90 days from receipt of the letter to pursue the claims in federal court against the party named in the charge of discrimination. 42 U.S.C. 2000e-5(f)(1). Defendant claims that Plaintiff's Complaint was filed 92 days after the letter was issued, and should thus be found time-barred. According to Plaintiff's Complaint, the EEOC's letter was dated Monday, May 12, 2014, which was 91 days before the Complaint was filed. The 90-day deadline fell on a Sunday, however, which extends the deadline to the following Monday[9]--meaning that Plaintiff's complaint was

---

[8]     The following subsections will similarly refer to these claims together, considering that "[c]laims under the PHRA are interpreted coextensively with Title VII claims." Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir. 2006).

[9]     Any federal statute that, like Title VII, "does not specify a method of computing time," falls within the scope of Federal Rule of Civil Procedure 6(a)(1)(C)—which states that "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." See Edwards v. Bay State Mill. Co., 519 F. App'x 746, 749 (3d Cir. 2013).

timely filed. Moreover, Plaintiff's PHRA discrimination claim is not subject to the same 90-day deadline, nor does Defendant object to its timeliness.

Defendant also argues that Plaintiff has failed as a matter of law to bring sufficient allegations to support a claim for discrimination. Again, Defendant only specifically addresses Plaintiff's Title VII claim. To make out an employment discrimination claim under Title VII, Plaintiff must establish that (1) he is member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Sherrod v. Phila. Gas Works, 57 F. App'x 68, 73 (3d Cir. 2003).

Defendant claims that Plaintiff does not plead circumstances giving rise to an inference of unlawful discrimination. In particular, Defendant claims that Plaintiff has not pointed to any non-African American employees that were treated more favorably than he was in similar circumstances. Defendant overlooks the circumstances that Plaintiff alleged surrounded his firing: the antagonism by the supervising sergeant; the ignored incident report; the allegations of theft; and the abrupt termination. In particular, Plaintiff does in fact speak of a similarly situated white officer that was

22

accused by an inmate of stealing $750, but who was neither investigated nor disciplined.

Under the circumstances, Plaintiff has stated a claim of discrimination under Title VII and the PHRA. Plaintiff alleges that he is an African American, that he was qualified for his job, that he suffered an adverse employment action, and that the circumstances of his firing were suggestive of discrimination. Thus, the Court will deny Defendant's motion to dismiss these claims as to Counts VIII and IX.

### 8.   Hostile Work Environment—Count XI[sic] and XI

As with Plaintiff's discrimination claims, Defendant argues that Plaintiff's hostile work environment claims arising under Title VII and the PHRA are time-barred, and that they fail as a matter of law. Defendant also alleges that Plaintiff's hostile work environment claim should be dismissed because of Plaintiff's failure to exhaust his administrative remedies.

With respect to Defendant's exhaustion argument, Defendant argues that the Charge of Discrimination Plaintiff filed with the EEOC only alleged discrimination in violation of Title VII. However, the time-stamped copy of Plaintiff's charge clearly contains hostile work environment claims alongside the

discrimination claims.[10] Resp. Mot. Dismiss Ex. A, ECF No. 13.
Thus, these claims are fairly within the scope of Plaintiff's
EEOC charge, and were properly exhausted.

Defendant also claims that Plaintiff's hostile work
environment claim under Title VII is time-barred. For the
reasons stated in the previous subsection relating to Counts
VIII and IX, the complaint was timely filed, and the claims are
not time-barred.

As for the substance of the claims, to establish his
hostile work environment claim, Plaintiff must demonstrate "by a
totality of the circumstances, the existence of a hostile or
abusive environment which is severe enough to affect the
psychological stability of a minority employee." Huggins v.
Coatesville Area Sch. Dist., 07-cv-4917, 2010 WL 4273317, at *5
(E.D. Pa. Oct. 29, 2010) (internal quotation marks omitted). In
particular, Plaintiff must prove: (1) he suffered intentional
discrimination because of his protected class; (2) the
discrimination was pervasive and regular; (3) the discrimination
detrimentally affected him; (4) the discrimination would
detrimentally affect a reasonable person of the same protected

---

[10]     For a circumstance more aligned with Defendant's
argument, see Wright v. Phila. Gas Works, 01-cv-2655, 2001 WL
1169108, at *3 (E.D. Pa. Oct. 2, 2001) ("Since the EEOC charge
is devoid of all claims except [a single claim of] racially
motivated discharge, the Title VII claims of hostile work
environment and retaliation are dismissed with prejudice.").

24

category in that position; and (5) the existence of respondeat superior liability. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).

Although it is a close question, Plaintiff does allege discrimination because of his race, and offers a number of factual claims to support that allegation. Plaintiff claims that the antagonism by the supervising sergeant was constant and relentless, and that it directly contributed to his termination. Plaintiff's circumstances also seem to be of the sort that would detrimentally affect a reasonable African American officer in his position.

As far as respondeat superior liability is concerned, such a relationship exists in connection with a hostile work environment claim if either: (1) the tort committed was within the scope of employment (as in, the defendant or the defendant's agent has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire, or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship. See Bonenberger, 132 F.3d at 26. Thus, if Defendant knew or should have known of the tortious misconduct and failed to take prompt remedial action, Defendant may be liable under Title VII.

25

The hostile behavior Plaintiff allegedly experienced at the hands of the Defendant's agents was within the scope of their employment, and Defendant may well have been negligent or reckless in failing to take remedial action based on Plaintiff's incident report. With all of this in mind, this totality-of-the-circumstances inquiry may tip in favor of Plaintiff, at least to the degree that these hostile work environment claims withstand Defendant's motion to dismiss--particularly since the standard of review directs the Court to view these allegations and inferences in a light most favorable to the non-moving Plaintiff. Thus, the Court will deny Defendant's motion to dismiss Counts X and XI.

### 9.   Retaliation (Federal)—Counts XII and XIII

Plaintiff alleges that Defendant "discriminated, retaliated against, and twice[11] discharged the Plaintiff because of his race in violation of Title VII" and of the PHRA. Compl. ¶¶ 86, 90. Again, Defendant argues that Plaintiff's retaliation claims arising under Title VII and the PHRA are time-barred, that they fail as a matter of law, and that the Title VII claim

---

[11]      As observed by Defendant, "This paragraph is patently false, as nothing has been pled in the factual averments to support that Plaintiff has been terminated more than once. Rather, Plaintiff's counsel lazily copied and pasted this paragraph, along with countless other paragraphs, from a different complaint." Mot. Dismiss 16, ECF 5.

should be dismissed because of Plaintiff's failure to exhaust his administrative remedies. The reasons that the hostile work environment claims were not time-barred and were properly exhausted are fully applicable here, and those arguments fail as to Plaintiff's retaliation claims as well.

To make out a prima facie claim of retaliation under Title VII, Plaintiff must establish: (1) he engaged in protected activity; (2) the employer took adverse action either after or contemporaneous with his protected conduct; and (3) a causal connection existed between his protected activity and the employer's adverse action. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Defendant argues that Plaintiff provided insufficient information to reasonably suggest the necessary causal link between Plaintiff's conduct and his termination. Plaintiff, however, alleged that the supervising sergeant that was the object of his incident report was the very same officer in charge of the receipt book that was improperly accessed to a give a receipt to the inmate who lost the $72. These allegations at least raise significant questions about the circumstances surrounding Plaintiff's abrupt termination, and they may well point to an instance of unlawful retaliation. Thus, the Court will deny Defendant's motion to dismiss Counts XII and XIII.

**V.    CONCLUSION**

For the foregoing reasons, the Court (1) will deny Plaintiff's motion to remand; (2) will grant Defendant's motion to strike; (3) will grant Defendant's motion to dismiss Plaintiff's common law claims of wrongful termination (Count I), breach of contract (II), unjust enrichment (III), negligence (IV), gross negligence (V), harassment (VI), and emotional distress (VII); and (4) will deny Defendant's motion to dismiss Plaintiff's Title VII and PHRA-based claims of discrimination (VIII and IX), hostile work environment (X and XI), and retaliation (XII and XIII). An appropriate order follows.